CHERYL C. ROUSE (State Bar No. 118313)
NORMAN P. BAHLERT (State Bar No. 135693)
LAW OFFICES OF ROUSE & BAHLERT
1246 18th Street
San Francisco, CA 94107
Mailing Address:
1459 18th Street, #104
San Francisco, CA 94107
Tel (415) 575-9444
rblaw@ix.netcom.com

Attorneys for Plaintiff
Landmark Collection Services, Inc.

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>BRYAN APPIO fka BRYAN LEWIS,<br><br><br>Debtor.<br>_____<br><br>LANDMARK COLLECTION SERVICES, INC.<br><br>Plaintiff,<br>v.<br><br>BRYAN APPIO fka BRYAN LEWIS,<br><br><br>Defendant.<br>_____ | Case No.:    8:22-bk-11375-SC<br><br>Chapter 7<br><br><br><br>Adv.Pro.No.<br><br>**COMPLAINT TO DETERMINE THE NONDISCHARGEABLITY OF DEBT UNDER 11 U.S.C. §523 (a)(6) and DENIAL OF DISCHARGE UNDER 11 U.S.C. §§ 727(a)(2) AND 727(a)(4)(A)** |

Plaintiff Landmark Collection Services, Inc., hereby files this Complaint and alleges as follows:

### I.    JURISDICTION AND VENUE

1.    The Debtor filed his Voluntary Petition under Chapter 7 of the United States Bankruptcy Code in the hereinabove Court on or about August 17, 2022.

2.    This court has jurisdiction over this adversary proceeding under the provisions

of Title 28 U.S.C. §§157 and 1334. This adversary proceeding is brought pursuant to 11 U.S.C. §§523(a)(6), 727(a)(2) and 727(a)(4)(A) and Bankruptcy Rule 7001.

3.    The claims for relief set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I) and (J).

4.    This adversary proceeding relates to the case of <u>In re Bryan Appio fka Bryan Lewis</u>, Case No. 8:22-bk-11375-SC, Chapter 7, pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.    Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court.

5.    Venue is proper pursuant to 28 U.S.C. § 1409.

## II.    PARTIES

6.    Plaintiff Landmark Collection Services, Inc. ("Landmark" or "Plaintiff") is a corporation organized and operating under the laws of the state of California.    Landmark is the assignee of the following judgments entered against the debtor in the Superior Court of the state of California, county of Orange:

A.    *Sean Walsh v. Mapperarti USA, LLC; Bryan Lewis,* Case No.30-2019-01046748-CU-WT-CJC (the "Walsh Action").    Judgment was entered on March 6, 2020.    An Acknowledgment of Assignment of Judgment, pursuant to California Code of Civil Procedure §673, was filed on November 18, 2020.    Said Assignment assigned all interest, right and title in the Judgment to Landmark.    The amount of the Judgment was $2,325,624.59.    Interest on the Judgment has accrued at the legal rate of 10% per annum since the date of entry of Judgment. .

B.    *Vishal Shah and Mattin Izadshenas v. Mapperarti USA, LLC, Bryan Lewis, and Terry Fisher,* Case No.30-2018-00983069-CU-OE-CJC (the "Shah and Izadshenas Action") Judgment was entered on January 20, 2021.    A separate judgment was entered as to each Plaintiff.    An Acknowledgment of Assignment of Judgment, pursuant to California Code of Civil Procedure §673, was filed on August 18, 2022.    Said Assignment assigned all interest, right and title in the judgments to Landmark.    The amount of the Judgment as to Vishal Shah

1   was $126,932.00.  The amount of the Judgment as to Mattin Izadshenas was $138,595.00.

2   Interest on each Judgment has accrued at the legal rate of 10% per annum since the date of

3   entry of each Judgment.

4       7.      Defendant Brian Appio fka Brian Lewis is the debtor herein (hereinafter

5   "Debtor" or "Defendant").

6       8.   **ALTER EGO ALLEGATIONS**

7           A.      The following entities are controlled by the Defendant, using the name of

8   either Bryan Lewis or Bryan Appio:   Boman Group, Inc., a California Corporation; DryWater,

9   Inc., a California Corporation; The Sweat Club, Inc., a California Corporation; Fab Crate, LLC,

10  a California Limited Liability Company; Hydrated VC or Hydratedfund, form of entity

11  unknown; Founder Bricks or FounderBrick, form of entity unknown; and Founderfrens, form

12  of entity unknown (collectively referred to as "Controlled Entities").

13          B.      Plaintiff is informed and believe, and upon such information and belief

14  alleges, that Defendant had a unity of interest and ownership in each of the above Controlled

15  Entities, such that all individuality and separateness between and among the Defendant and the

16  Controlled Entities ceased to exist. Defendant indiscriminately transferred money and other

17  property between himself and the Controlled Entities, and used the corporate status of the

18  Controlled Entities in bad faith as a mere shell to conceal transactions, and avoid and/or

19  transfer personal liability.

20          C.      Defendant exercised such complete control and dominance of the

21  Controlled Entities and used and co-mingled the Controlled Entities assets and moneys to

22  benefit himself such that any individuality or separateness between the Defendant and the

23  Controlled Entities does not and did not exist. Adherence to the fiction of the separate existence

24  of the Controlled Entities as separate and distinct from the Defendant would permit an abuse

25  of the corporate privilege and would sanction fraud and/or promote injustice, and produce an

26  inequitable result.

27  / / /

28  / / /

Complaint for Nondischargeability of Debt and
Denial of Discharge                3

### III. FACTUAL ALLEGATIONS REGARDING WALSH, SHAH AND IZADSHENAS JUDGMENTS

### A. WALSH COMPLAINT AND JUDGMENT

9.    On January 25, 2019, Sean Walsh ("Walsh") commenced the Walsh Action against the debtor, then known as Bryan Lewis, and an entity known as Mapperarti USA, LLC ("Mapperarti").  On May 13, 2019, Sean Walsh filed a First Amended Complaint for Damages stating 11 causes of action alleging violations of the Fair Employment & Housing Act based on Actual/Perceived Disability Harassment, Discrimination, and Retaliation in violation of Cal. Gov. Code §12940 et seq.; Failure to Engage in the Mandatory Good-Faith Interactive Process, Cal. Gov. Code§ 12940 et seq., Failure to Accommodate, Cal. Gov. Code § 12940 et seq.; Age Harassment, Discrimination, and Retaliation in violation of Cal. Gov. Code § 12940 et seq.; Whistleblower Violation, Cal. Labor Code § 1102.5; Intentional Infliction of Emotional Distress; and Retaliation & Wrongful Termination in Violation of Public Policy (the "Complaint").

10.    Walsh was employed by Mapperarti USA, LLC beginning in or around January 27, 2017 as a Human Resources Recruiter until his wrongful termination on or about March 1, 2018.

11.    Per the Complaint, Debtor was a Manager, Officer, Shareholder, Director, Supervisor, Managing Agent, Owner, and Principal of Mapperarti.

12.    During his employment with Mapperarti, on a severe and/or pervasive basis, Walsh was subjected to discriminatory treatment and adverse employment actions due to his disabilities. On or about February 13, 2018, Walsh was trying to open a door at work and it flew open striking him in the face. Walsh injured his face and head due to the impact.  Walsh immediately developed pain in various body parts including his head, face, neck, and right knee.  Walsh reported his injuries and then sought emergency medical care. Due to the trauma to his head and face, Walsh suffered from blurred vision, difficulty focusing, severe headaches, a sprained knee and wrist, sensitivity to light and noise, and memory dysfunction. At no point did Debtor or Mapperarti offer Walsh any accommodations or modified duty. In fact, Walsh

1  was forced to use vacation days and sick time to take the necessary time off to heal from his

2  injuries, while continuing to work from home.

3       13.    Throughout his employment, Walsh was harassed, discriminated against, and

4  retaliated against based on his age by Debtor. Debtor repeatedly made ageist comments about

5  Walsh including, "old school," "outdated," "you don't fit in here," "we need to give you a

6  clothing makeover," "we need to upgrade your clothes, old man," "you are too old," and "we

7  need someone hip."  Indeed, Debtor called Walsh "old man" on more than five separate

8  occasions, despite Walsh asking Debtor to stop. Further, any time Walsh needed assistance

9  with any of the company's technology, Debtor would laugh at him and accuse him of being "too

10 old," and "outdated."  Debtor also encouraged others at the company to participate in this

11 verbally abusive behavior toward Walsh.

12      14.    Debtor's intentional abuse of Walsh and ultimate wrongful termination by Debtor

13 caused Walsh mental suffering, grief, anxiety, fear, emotional distress, depression, severe

14 weight loss, and trouble sleeping.

15      15.    In support of Walsh's request for entry of default judgment against Debtor and

16 Mapperarti, Walsh filed a Summary of the Case in Support of Request for Default Judgment

17 and supporting declarations.  In the Summary, Walsh requested the several elements of

18 damages, including the following:

19      - $1,500,000 for emotional distress damages

20      - $500,000 for past, present and future loss of earnings

21      - $300,000 for punitive damages

22      - $1,204.59 for costs

23      - $24,420 for attorneys fees

24      16.    On March 6, 2020, Judgment was entered jointly and severally against Debtor

25 and Mapperarti for the amounts requested.  No appeal was taken.  The judgment is final.

26      17.    Subsequent to the entry of this Judgment, Debtor changed his name from Bryan

27 Lewis to Bryan Appio.  Prior to the filing of the instant bankruptcy case, Plaintiff undertook

28 actions to attempt to collect on the Judgment.  Upon information and believe, Debtor changed

---

Complaint for Nondischargeability of Debt and
Denial of Discharge                    5

1   his name to avoid collection on the judgment debt and transferred money and assets for the

2   same purpose.

3               **B.      SHAH AND IZADSHENAS COMPLAINT AND JUDGMENT**

4           18.     On April 2, 2018, Vishal Shah ("Shah") commenced the Shah and Izadshenas

5   Action against the Debtor, then known as Bryan Lewis, Terry Fisher and the entity known as

6   Mapperarti USA, LLC ("Mapperarti").   On May 25, 2018, Shah filed a First Amended

7   Complaint for Damages ("FAC"), which added Izadshenas as a Plaintiff.   The FAC alleged

8   11  causes  of  action  for  Discrimination,  Harassment,  Retaliation,  Failure  to  Prevent

9   Discrimination,   Labor  Code  §232,  Labor  Code  §232.5,  Labor  Code  §1102.5,  False

10  Imprisonment, Wrongful Termination, Unpaid Wages & Penalties, and Failure to Maintain

11  Business Records.   The FAC sought general, special and punitive damages.

12          19.     At the time of the matters alleged in the FAC, Shah was a 19-year-old male with

13  his familial ancestry being from India.   On or about July 19, 2016, Shah was hired on full-time

14  by Mapperarti as an advertising agent. His supervisors were Chief Operating Officer Bryan

15  Lewis  and Founder and Global CEO of Mapperarti Terry Fisher.

16          20.     Shah was an exemplary employee. His sales numbers frequently exceeded other

17  employees' and raised income when others struggled. Generally, he got along well with his

18  coworkers and had no problems at work until Bryan Lewis came onboard on about January 9,

19  2017.   Mr. Lewis (the "Debtor") began actively operating the company. He identified himself

20  as an owner and investor, and identified his titles as the company's Chief Operating Officer

21  (COO) and an "Investing Partner."  The Debtor was the person who was at the top of the chain

22  of command, or "the boss" at the company. He held himself as being primarily responsible for

23  all business operations. The Debtor  was the person who was primarily responsible for running

24  the day-to-day operations. He was also the person who was creating operational and personnel

25  policies. He was also Shah's supervisor.

26          21.     Problems with the Debtor started almost immediately. What was once a relatively

27  lax and friendly work environment, became rigid and hostile. The atmosphere became racially

28  charged.   The Debtor made rampant, racial, political, and national origin-centered comments

Complaint for Nondischargeability of Debt and
Denial of Discharge                             6

in the workplace. He also expressed ethnic stereotypes about dark-skinned, Middle Eastern people, such as Shah. For example, the Debtor habitually referred to Shah and another younger, Middle Eastern co-worker named Mattin Izadshenas (hereinafter "Izadshenas"), as the "Brown Boys." This nickname was picked up by other employees as well, including by Owner and Chief Executive Officer (CEO) Terry Fisher. The name became the common collective designation used to refer to Shah and Izadshenas.

22.    Shah considered the "Brown Boys" designation to be racist, insulting, and offensive. Shah told the Debtor and Mr. Fisher as much, saying that he felt the name was insulting and that he and Izadshenas were not even from the same country. Mr. Fisher responded by saying he thought the "Brown Boys" were both Indian. Both Izadshenas and Shah continued to try to counter and oppose the racism whenever reasonably possible by saying the nickname was racist, but the Debtor and Mr. Fisher were undeterred. When another employee once referred to Shah as being "Indian." The Debtor actually corrected the employee, saying "No. 'Brown Boy.'"    Unfortunately, the casual racism was infectious in the workplace. Another manager began chiming in with racist jokes, such as saying, "Everybody pitch in to buy Vishal a turban for his birthday." Co-workers laughed and Shah was very embarrassed. Jokes were also frequently made about the "Brown Boys'" families working at 7-Eleven. On multiple occasions, employees referred to the "Brown Boys" as "Taliban."

23.    These events were very upsetting to Shah and Izadshenas. It caused Shah severe anxiety before he would arrive at work. All day, Shah would wait for the jokes to happen. When they did, Shah would sit there while the other employees either laughed and stared, or looked at him with sympathy. It was humiliating. Shah was 19 years old at this time and just recently out of high school. This was his first, real job. Shah did not know what to do or how to control the situation. Shah was made to feel belittled and dispirited by the racial comments and the constant pointing out that he had dark skin.  The comments became commonplace and occurred on virtually a daily basis. Despite the rampant and overt nature of racism, the Debtor never did anything to correct the situation.  Izadshenas was the same age of Shah and experienced extreme fear and anxiety regarding  the workplace.

24.     On May 17, 2017, Shah made an anonymous post to a website called the "Ripoff Report" in a section designed to allow employees a forum to accurately express their own thoughts and opinions about their employers.  The Debtor and Mr. Fisher somehow found out about the post.  On May 18, 2017, Shah was summoned to a meeting with the Debtor and Mr. Fisher.   Upon entering the "meeting," Shah noticed that the Debtor and Mr. Fisher had displayed the anonymous post to the Rip-off Report website on an overhead screen for everyone in the room to see. Shah was told: "Take a seat. We are just letting you know the Newport Beach Police Department asked us to record this conversation." Shah was absolutely terrified by this implied threat that he was about to be arrested. Again, he was a 19-year-old working his first, real job. He did not know about the legal protections afforded employees who accurately report working conditions. Shah does not know if there was an actual recording of that meeting.

25.     Mr. Fisher told Shah that he knew that Shah was the one who wrote the post. He said he knew that Shah had plans to write a subsequent post. Mr. Fisher demanded that Shah explain his actions and threatened that he would be arrested by telling him that law enforcement was actively investigating him. Debtor was present in the room at all times.  The threats and intimidation made Shah have a panic attack. His heart was racing and he became flushed and sweaty. He thought about running out of the room, but the door was closed and based on the statements about law enforcement, he did not think he had the right to simply walk out. He was terminated that day by being marched out of the office.   Izadshenas was also terminated that day due to his perceived connection with Shah.

26.     After the FAC was filed, the Debtor filed a General Denial on July 11, 2018. However, due to his failure to participate in the action, his response was ultimately stricken by the court. In support of Shah's and  Izadshenas'  request for entry of default judgment against Debtor, Fisher and Mapperarti, they filed a Memorandum of Points and Authorities in Support of Plaintiffs' Application for Default Judgment. In the Memorandum, they set forth their respective damage requests.

A.  Shah requested a total judgment of $126,932 .00 as follows:

Complaint for Nondischargeability of Debt and
Denial of Discharge                                      8

| | | |
|---|---|---|
| | Economic Losses | $35,494 |
| | Emotional Distress | $70,988 |
| | Attorney's Fees | $20,025 |
| | Costs | $425 |

B.   Izadshenas requested a total judgment of $138,595.00 as follows:

| | | |
|---|---|---|
| | Economic Losses | $68,145 |
| | Emotional Distress | $50,000 |
| | Attorney's Fees | $20,025 |
| | Costs | $425 |

The court granted the damage requests in full and entered Judgment in favor of each plaintiff, jointly and severally against the Debtor, Fisher and Mapperarti.

## IV.

### FIRST CLAIM FOR RELIEF
### (FOR THE DETERMINATION OF NONDISCHARGEABILITY
### OF DEBT UNDER 11 U.S.C. §523 (a) (6) FOR  WILLFUL AND MALICIOUS
### INJURY BY THE DEBTOR AS TO WALSH)

27.    Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 26, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

28.    As alleged hereinabove, defendant's harassment and discriminatory statements to Sean Walsh were willful in that defendant either possessed the subjective motive to cause harm to Mr. Walsh in the form of humiliation and/or severe emotional distress or defendant believed that such humiliation and severe emotional distress was substantially certain to result from his conduct.

29.    Defendant's actions and statements made as alleged herein which specifically targeted Mr. Walsh on account of his disability and his age were malicious in that the harm caused to Sean Walsh was as a result of a wrongful act, done intentionally, which necessarily caused the damage and was done with no just cause or excuse.

WHEREFORE, Plaintiff prays for judgment against the defendant under 11 U.S.C. §523(a)(6).

## V.

### SECOND CLAIM FOR RELIEF
### (FOR THE DETERMINATION OF NONDISCHARGEABILITY
### OF DEBT UNDER 11 U.S.C. §523 (a) (6) FOR WILLFUL AND MALICIOUS
### INJURY BY THE DEBTOR AS TO SHAH AND IZADSHENAS)

30.     Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 29, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

31.     As alleged hereinabove, defendant's harassment and discriminatory statements to Vishal Shah and Mattin Izadshenas were willful in that defendant either possessed the subjective motive to cause harm to Mr. Shah and Mr. Izadshenas in the form of humiliation and/or severe emotional distress or defendant believed that such humiliation and severe emotional distress was substantially certain to result from his conduct. Further, defendant participated in wrongfully imprisoning Mr. Shah while falsely claiming the involvement of law enforcement for the sole motive of causing shock, fear and harm to Mr. Shah.

32.     Defendant's actions and statements made as alleged herein which specifically targeted Mr. Shah and Mr. Izadshenas on account of their ethnicity and skin color were malicious in that the harm caused to Mr. Shah and Mr. Izadshenas was as a result of a wrongful act, done intentionally, which necessarily caused the damage and was done with no just cause or excuse.

WHEREFORE, Plaintiff prays for judgment against the defendant under 11 U.S.C. §523(a)(6).

## VI.

### THIRD CLAIM FOR RELIEF
### (DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2))

33.     Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 32, inclusive, of this Complaint, as if each of those allegations were fully

1  restated and set forth hereinbelow.

2      34.    11 U.S.C. § 727(a)(2) requires denial of a discharge if a debtor, with intend to

3  hinder, delay or defraud a creditor has transferred, removed or concealed property of the debtor

4  within one year before the date of the filing of the petition.

5      35.    Within one year of the Petition Date, Plaintiff is informed and believes and based

6  thereon alleges that Debtor established a crypto currency account with Ethereum through the

7  use of the Controlled Entities known as Founder Bricks and/or Founder Frens. On January 12,

8  2022, Debtor registered two trademarks for NFTs[1]. Further, Plaintiff is informed and believes

9  and based thereon alleges that in March of 2022, Debtor began marketing and selling the NFTs

10 through his Ethereum account and then almost immediately moving the money out the account

11 to other accounts controlled by the Debtor. The balance in the Ethereum account on March 11,

12 2022 was $1,438,633.13.  The balance in the same account on March 12, 2022 dropped to

13 $41,760.39.

14     36.    Plaintiff is informed and believes and based thereon alleges that on June 29,

15 2022, Debtor sold a second round of trademarked NFTs through the Ethereum account.  On

16 July 4, 2022, the balance in the Ethereum account was $282,393.34.  On July 5, 2022, the

17 balance dropped to  $2,207.32.

18     37.    Plaintiff is informed and believes and based thereon alleges that on July 26,

19 2022, Debtor launched a new product through Founderfrens which was a vinyl figure of a bear

20 with an "x" over the eye.   Plaintiff is informed and believes and based thereon alleges that

21 the sales for this product generated approximately $62,143.00.  On August 6, 2022, the sum

22 of $61,509 was transferred from the Founderfrens Ethereum account.  Debtor filed his

23 bankruptcy petition 11 days later.

24     38.    None of these accounts or transfers of money were disclosed in the bankruptcy

25 schedules or statement of financial affairs filed by the Debtor.  Debtor specifically denied in

26 his testimony at his initial and continued 341(a) meeting of creditors that he had or controlled

27

28      [1]Non-Fungible Tokens

any crypto currency accounts.  Debtor concealed these assets and accounts and thereafter transferred the money to hinder, delay and defraud creditors, including Plaintiff herein who holds judgments against the Debtor.

WHEREFORE, Plaintiff prays that Debtor's discharge be denied under Code §727(a)(2) for having knowingly and fraudulently concealed material property of the Debtor and thereafter transferring substantial sums of money.

## VII.

## FOURTH CLAIM FOR RELIEF
## (DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)(A))

39.    Plaintiff hereby incorporates and realleges each and every allegation set forth in paragraphs 1 through 38, inclusive, of this Complaint, as if each of those allegations were fully restated and set forth hereinbelow.

40.    Under 11 U.S.C. § 727(a)(4)(A), a Court shall not grant a debtor a discharge if the debtor knowingly and fraudulently, in connection with a case, made a false oath or account. At the initial meeting of creditors and continued meetings of creditors, the Debtor affirmatively testified that his schedules and statement of financial affairs were true and correct.

41.    Plaintiff is informed and believes, and based thereon alleges that the Defendant falsely testified to the accuracy of his schedules and statement of financial affairs, filed on August 17, 2022, including but not limited to the following matters:

Schedule A/B

Item 8.  Collectibles of value.  Debtor failed to list the valuable NFT collection that he owns, as well as the vinyl figures of the bear described in Paragraph 37 herein.

Item 17.  Deposits of money.  Debtor failed to list his interest in the Ethereum account or other financial accounts maintained by Boman.  Debtor testified at his meeting of creditors that he ran his personal expenses through the Boman accounts.

Item 18.  Bond, mutual funds or publicly traded stocks.  Debtor claimed none.  Debtor had an E-trade account and an account at Robinhood.

1    Item 19.  Nonpublicly traded interests in business.  Debtor claimed a 20% ownership

2    interest in Boman Group, Inc.  However, Debtor's 2021 tax return states that Debtor is the sole

3    owner.  Therefore, Debtor is either falsely claiming to have only a 20% interest in the company

4    or he transferred the 80% interest within the year prior to filing the petition and failed to

5    disclose the transfer and the consideration received.  In addition, Debtor failed to list his

6    interest in the following entities:  DryWater, Inc., Founder Bricks, Hydrated VC and the

7    "investments" made by Hydrated VC.

8        Item 26.  Trademarks.  Debtor stated none.  In fact, Debtor owns 4 trademarks

9    personally for Founder Bricks, DryWater, Inc., and "X" (image of Founder Bricks bears).

10        Item 37.   Ownership interest in business related property.  Debtor failed to list the

11   valuable NFT collection that he owns, as well as the vinyl figures of the bear described in

12   Paragraph 37 herein.

13        Item 41.  Inventory.  Debtor failed to list the valuable NFT collection that he owns, as

14   well as the vinyl figures of the bear described in Paragraph 37 herein.

15        Item 42.  Interest in partnerships or joint ventures.  Debtor failed to list his interest in

16   the non-corporate entities such as Founder Bricks, Founderfrens, hydrated.vc; drywater.co, and

17   multiple ventures and investments through Hydrated VC.

18        Schedule I:    Debtor claims no income.  However, at the meetings of creditors Debtor

19   testified that the Boman Group pays the rent on Debtor's apartment and Debtor runs all of his

20   living expenses through the Boman Group bank accounts.  Bank records from the Boman

21   Group show large sums of money moving in out of numerous accounts, including ATM cash

22   withdrawals, online transfers, and wire transfers.

23        Statement of Financial Affairs:

24        - Debtor falsely stated that he has no income.

25        - Debtor failed to disclose any of the funds, interests in property, or stocks transferred

26   within the two years prior to filing the petition.

27        False testimony at 341(a) meeting:   Debtor specifically denied in his testimony at his

28   initial and continued 341(a) meeting of creditors that he had or controlled any crypto currency

---

Complaint for Nondischargeability of Debt and
Denial of Discharge                 13

1    accounts.

2        42.    Plaintiff is informed and believes, and based thereon alleges that the false oaths

3    in the Defendant's schedules and statement of financial affairs were done knowingly and

4    fraudulently by the Defendant with the intent to withhold from the duly appointed Chapter 7

5    Trustee and creditors information relevant to the Defendant's property and financial affairs.

6    Defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

7        WHEREFORE, Plaintiff prays for judgment against Defendant as hereinafter set forth:

8        On the First Claim for Relief Under 11 U.S.C. §523(a)(6) as to the Sean Walsh

9    Judgment, as follows:

10        1.    For a determination that the Judgment entered against defendant on March 6,

11    2020 in the amount of $2,325,624.59, together with post-judgment interest at the rate of 10%

12    pursuant to California law, is nondischargeable under 11 U.S.C. §523(a)(6); and

13        2.    For such other and further relief as the Court deems just and proper.

14        On the Second Claim for Relief Under 11 U.S.C. §523(a)(6) as to Vishal Shah and

15    Mattin Izadshenas Judgment, as follows:

16        1.    For a determination that the Judgment entered against defendant and in favor of

17    Vishal Shah on January 20, 2021, in the amount of $126,932.00, together with post-judgment

18    interest at the rate of 10% pursuant to California law, is nondischargeable under 11 U.S.C.

19    §523(a)(6);

20        2.    For determination that the Judgment entered against defendant and in favor of

21    Mattin Izadshenas on January 20, 2021, in the amount of $138,595.00, together with post-

22    judgment interest at the rate of 10% pursuant to California law, is nondischargeable under 11

23    U.S.C. §523(a)(6); and

24        3.    For such other and further relief as the Court deems just and proper.

25        On the Third Claim For Relief Under 11 U.S.C. § 727(a)(2)as follows:

26        1    For the denial of Debtor's discharge under §727(a)(2); and

27        2.    For such other and further relief as the Court deems just and proper.

28    / / /

1    <u>On the Fourth Claim For Relief Under 11 U.S.C. § 727(a)(4)(A) as follows</u>:

2        1    For the denial of Debtor's discharge under §727(a)(4)(A); and

3        2.    For such other and further relief as the Court deems just and proper.

4

5                               Respectfully submitted,

6    Dated:   March 30, 2023    LAW OFFICES OF ROUSE & BAHLERT

7

8                               BY:___/s/ Cheryl C. Rouse_____
                               CHERYL C. ROUSE

9                                   Attorneys FOR Plaintiff
                               Landmark Collection Services, Inc.